1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

EDWIN AGUSTIN DORMOY,

Plaintiff,

v.

HIRERIGHT, LLC, et al.,

Defendants.

Case No. 23-cv-02511-EMC

**ORDER RE DEFENDANT'S MOTION TO DISMISS**

Docket No. 20

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Edwin Agustin Dormoy is a former driver for Lyft, Inc. ("Lyft") and Uber
Technologies, Inc. ("Uber").  He has filed suit against Lyft and Uber, as well as HireRight, LLC
("HireRight") (collectively, "Defendants"), because his rideshare accounts were deactivated, and
there was no response to his requests for information relating to the account suspensions.
HireRight is an employment screening company that provides employment background reports to
employers.  Plaintiff claims HireRight's failure to respond to his request for a copy of his
background screening file, violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §
1681 *et seq.*, and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal.
Civ. Code § 1786.2 *et seq.*

HireRight moves to dismiss the complaint based on (1) lack of personal jurisdiction and
(2) failure to state a claim for relief.  *See* Fed. R. Civ. P. 12(b)(2), (6).  With respect to the
jurisdictional challenge, Plaintiff asks for leave to conduct jurisdictional discovery; in the
alternative, Plaintiff requests a transfer of the claims against HireRight to a different district court
(either in Tennessee or Oklahoma).  The Court held a noticed hearing on the motion on July 27,
2023.  Plaintiff failed to make an appearance for the hearing.

1    For the reasons discussed below, the Court finds that personal jurisdiction is lacking over

2    HireRight and denies Plaintiff's request for jurisdictional discovery.  However, in lieu of

3    dismissal, the Court shall sever the claims against HireRight and transfer them to the Middle

4    District of Tennessee.  Because the Court lacks personal jurisdiction over HireRight, it does not

5    address HireRight's motion to dismiss for failure to state a claim for relief.

6                        **I.      FACTUAL AND PROCEDURAL BACKGROUND**

7    A.     Complaint

8           In his complaint, Plaintiff alleges as follows.  Plaintiff is a resident of Philadelphia,

9    Pennsylvania.  Compl. ¶ 15.   Plaintiff was a driver for the rideshare companies Lyft and Uber

10   before both his accounts were suspended.  In or about February 2021, Plaintiff's account with Lyft

11   was deactivated.  *Id*. ¶ 2.  A few months later, in or about April 2021, Uber requested a

12   background screening report on Plaintiff from HireRight (an employment screening company).  *Id*.

13   ¶ 3.  In the report, HireRight alerted Uber that "Lyft, Inc. informed HireRight that [Plaintiff] is not

14   currently eligible to use its platform due to safety-related reports."  *Id*. ¶ 4, Ex. 1.  Due to this

15   background report, Plaintiff's Uber driver account was deactivated in April 2021.  *Id*. ¶ 5.  As a

16   "direct result" of this report, "Plaintiff has lost two sources of income."  *Id*. ¶ 7.

17          Approximately a year later, in March 2022, Plaintiff sent to HireRight a request for

18   information, asking to obtain a copy of the "full file" of his original background check report.

19   Plaintiff sent his request to a HireRight office located in Irvine, California.[1]  *Id*. ¶¶ 8, 34.  Certified

20   mail tracking showed the request as "delivered" on March 14, 2022.  *Id*. ¶ 35.  In spite of such,

21   HireRight has never produced the employment background check report that resulted in Plaintiff's

22   Uber account suspension.  *Id*. ¶ 9.

23          Based on, *inter alia*, the above allegations, Plaintiff has asserted six claims for relief.  For

24   purposes of the pending motion, the Court need only concern itself with Count 3, which is the sole

25

26   [1] Attached to Plaintiff's complaint as Exhibit 1 is what appears to be the report that HireRight
     gave to Uber.  The front page of the report includes a notice to California consumers, instructing
27   that, "If you would like additional information regarding your disclosure rights, you can request
     this information from HireRight by email . . . , by telephone . . . or by mail."  Compl., Ex. 1
28   (report).  The mailing address listed was the location of the Irvine office.  Presumably, Plaintiff
     directed his request for information to HireRight's Irvine office based off of this notice.

United States District Court
Northern District of California

1   claim pled against HireRight.  *Id.* ¶¶ 23-52.  In Count 3, Plaintiff alleges that HireRight, a

2   consumer reporting agency, violated its statutory duty under both federal and state law to respond

3   to requests for copies of consumer files.  *Id.* ¶¶ 33–37.  Specifically, HireRight violated §

4   1681g(a)(2)[2] of the FCRA and §§ 1786.10[3] and 1786.22[4] of the California ICRAA.  *Id.* ¶¶ 15–27.

5   B.      Evidence re Personal Jurisdiction

6           As noted above, HireRight has moved to dismiss for lack of personal jurisdiction and for

7   failure to state a claim for relief.  In support of its motion to dismiss for lack of personal

8   jurisdiction, HireRight has submitted evidence.[5]  In contrast, Plaintiff has failed to submit *any*

9   evidence.  The Court briefly addresses the evidence provided by HireRight.

10          "HireRight is a limited liability company organized under the laws of Delaware."  Piper

11  Decl. ¶ 5.  Apparently, HireRight once maintained its headquarters in Irvine, California.  Counsel

12  for HireRight made this express representation at the hearing on the motion to dismiss.  While the

13  Supplemental Vetter Declaration, submitted by HireRight after the hearing on the motion to

14  dismiss, does not explicitly state such, it effectively confirms as much.  Docket 46-1 ("Supp.

15  Vetter Decl.") ¶ 10 (testifying that "HireRight operations have been centered and directed from

16  states *other* than California since approximately 2019") (emphasis added).  HireRight's current

17  headquarters and principal place of business are in Nashville, Tennessee.  Piper Decl. ¶ 5; *see also*

18  *id*. ¶¶ 8–9 (testifying that HireRight's corporate office mailing address is in Nashville and that its

19

20  [2] Section 1681g(a)(2) of the FCRA provides in relevant part that "[e]very consumer reporting
21  agency shall, upon request, and subject to section 610(a)(1) [*i.e.*, § 1681h(a)(1)], clearly and
    accurately disclose to the consumer: . . . (2) The sources of the information [in the consumer's
22  file]."  15 U.S.C. § 1681g(a)(2).

23  [3] Section 1786.10 of the ICRAA provides, *inter alia*, that "[e]very investigative consumer
    reporting agency shall, upon request and proper identification of any consumer, allow the
24  consumer to visually inspect all files maintained regarding the consumer at the time of the
    request."  Cal. Civ. Code § 1786.10(a).

25  [4] Section 1786.22 of the ICRAA directs, *inter alia*, that "[a]n investigative consumer reporting
26  agency shall supply files and information required under Section 1786.10 during normal business
    hours and on reasonable notice."  Cal. Civ. Code § 1786.22(a).

27  [5] For purposes of the pending motion, the Court considers both the evidence that HireRight
28  submitted in conjunction with its briefs, as well as the evidence that it provided after the hearing
    (as ordered by the Court).

1    Board meeting usually occur in Nashville).  HireRight began "purposefully establishing its

2    headquarters and principal place of business in Nashville in April 2021."  Supp. Vetter Decl. ¶ 10.

3    　　　As of July 31, 2023, HireRight employs approximately 3,455 people globally.  *Id.* ¶ 4.

4    Approximately 124 employees are based in Nashville.  *Id.* ¶ 5.  Another 237 employees are based

5    in Tulsa, Oklahoma, *id.* ¶ 6, and 67 are based in Irvine.  *Id.* ¶ 7.  Although HireRight continues to

6    have employees who are based in California, its Irvine office closed in March 2023 (the time when

7    Plaintiff filed his complaint).  *Id.* ¶ 8.  HireRight currently leases some suites in Newport Beach,

8    California, "for employees who need office or conference space to work while in California."  *Id.*

9    ¶ 9.

10    　　　HireRight does not dispute that it is registered to do business in California, as alleged in

11    the complaint.  Compl. ¶ 17.  However, HireRight does challenge Plaintiff's assertion that it was

12    headquartered in California.  Plaintiff claims (without a declaration or any other specific evidence

13    to back up the claims) that HireRight has over 200 people at the Irvine office and that (based on an

14    "quick internet search") "8 of Defendant's top executives reside in Southern California."  P's Opp.

15    at 6–7 (providing the names and titles of the employees at issue).  HireRight directly disputes

16    these allegations and provides evidence in support.  *See generally* Vetter Decl.  In a declaration

17    from Sam Vetter, Senior Director of Human Resources, HireRight provides a comprehensive list

18    of executives and describes various states across the country wherein the company's chief

19    executives and officers reside.  *Id*. ¶¶ 4–14.  HireRight acknowledges that some of its executives

20    reside in California, namely the Chief Financial Officer and Chief Accounting Officer, but

21    maintains that most of its executives reside in other states.  This includes the Chief Executive

22    Officer (South Carolina), the General Counsel (Utah), the Chief Human Resources Officer

23    (Texas), the Chief Digital Officer (Connecticut), and the Chief Technology Officer and the Head

24    of Global Operations (both Tennessee).  *Id*.  Although some of the "executives" Plaintiff

25    conclusory identifies in his opposition may be high-level employees (*e.g.*, Director of Business

26    Data Insights; Executive Vice President, Growth Verticals & Managing Director, Americas), they

27    do not appear to be high-level officers.

28    　　　As for employees in California, HireRight admits, as noted above, that it has 67 employees

United States District Court
Northern District of California

4

1   there.  The California employees "includ[e] members of the finance and information technology

2   departments"; none are involved "with receiving, processing, or fulfilling file disclosure requests."

3   Piper Decl. ¶ 16; *see also id.* ¶ 13 (stating that "[n]one of the functions of the Applicant Care

4   Team with respect to the receipt and fulfillment of file disclosure requests takes place, or took

5   place, in California").  In fact, the "vast majority" of HireRight's operations team, responsible for

6   maintaining and implementing policies and procedures compliant with the FCRA, is located in

7   Nashville and Tulsa.  *Id.* ¶¶ 6–7.  In addition, HireRight's Applicant Care Team, which is

8   "responsible for receiving and fulfilling file disclosure requests," is located "primarily" in Tulsa.

9   *Id.* ¶ 11.  According to HireRight, when Plaintiff mailed in his request for his consumer file to the

10   Irvine office in March 2022, this was contrary to its website which "instruct[ed] consumers to

11   send file disclosure requests to its Tulsa, Oklahoma office."  *Id.* ¶ 12.

## II.   DISCUSSION

13   A.      Legal Standard

14          Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss an action where it

15   does not have personal jurisdiction over a defendant.  Fed. R. Civ. P. 12(b)(2).  "[T]he plaintiff

16   bears the burden of establishing that jurisdiction is proper."  *Mavrix Photo, Inc. v. Brand Techs.,*

17   *Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  However, "[w]here, as here, the defendant's motion is

18   based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima*

19   *facie* showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*  In addition,

20   "[u]ncontroverted allegations in the complaint must be taken as true, and factual disputes are

21   construed in the plaintiff's favor."  *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d

22   597, 602 (9th Cir. 2018).  On the other hand, a district court "'may not assume the truth of

23   allegations in a pleading which are contradicted by affidavit.'"  *Ayla, LLC v. Alya Skin Pty. Ltd.*,

24   11 F.4th 972, 978 (9th Cir. 2021).[6]

25   B.      General Law on Personal Jurisdiction

26          As the Ninth Circuit has held:

27

28   [6] In the instant case, Plaintiff makes no jurisdictional allegations in the complaint other than a
     conclusory statement that HireRight is "subject to the jurisdiction of this Court."  Compl. ¶ 17.

United States District Court
Northern District of California

United States District Court
Northern District of California

> Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). In its motion to dismiss, HireRight maintains that both general and specific jurisdiction is lacking in the case at bar. Notably, in his opposition, Plaintiff did not challenge HireRight's contention that there is no specific jurisdiction. Instead, he argues only that the Court has general jurisdiction over HireRight. Because Plaintiff has failed to address the issue of specific jurisdiction, in face of an express argument made by HireRight in its opening brief, the Court finds that he has waived the right to assert specific jurisdiction. *Cf. United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver as "the intentional relinquishment or abandonment of a known right" in an analysis of Rule 52(b)); *see also Madau v. Nat. Balance Pet Foods, Inc.*, No. CV1504875SJOAJWX, 2015 WL 13917985, at *6 (C.D. Cal. Oct. 8, 2015) (holding that a plaintiff who failed to address a defendant's argument regarding the right to declaratory relief under the FCRA effectively waived the issue).

C.     General Jurisdiction

"Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction [*i.e.*, general jurisdiction] there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a foreign corporation to be subject to a forum's general jurisdiction, the corporation's affiliations with the state must be "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court has emphasized that a corporation's place of incorporation and principal place of business are "'paradig[m] . . . bases for general jurisdiction.'" *Id.* (quoting

6

1    *Goodyear*, 564 U.S. at 924).  "Only in an 'exceptional case' will general jurisdiction be available

2    anywhere else."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting

3    *Daimler*, 571 U.S. at 139 n.19).

4             In *Daimler*, the Supreme Court held that, although a German corporation had a subsidiary

5    car dealership in California which maintained "substantial, continuous, and systematic course of

6    business" within the state, these contacts were not enough to render the parent corporation "at

7    home" for purposes of general jurisdiction.  *Daimler*, 571 U.S. at 199.  Although the corporation

8    benefitted from sizable sales within the state, the Argentinian plaintiffs' claims of human rights

9    violations that occurred outside the United States had "nothing to do with anything that occurred

10   or had its principal impact in California."  *Id.* at 139.  The Court declined to extend such an

11   "exorbitant exercise[] of all-purpose jurisdiction" because it "would scarcely permit out-of-state

12   defendants 'to structure their primary conduct with some minimum assurance as to where that

13   conduct will and will not render them liable to suit.'"  *Id.* (quoting *Burger King Corp. v.*

14   *Rudzewicz*, 471 U.S. 462, 472 (1985)).

15            Subsequent to *Daimler*, the Ninth Circuit held in an unpublished decision, *Johnson v. UBS*

16   *AG*, 860 F. App'x 531 (9th Cir. 2021), that a Swiss corporation with a physical presence in

17   California fell short of being "essentially at home" in the state.  *Id.* at 532.  The defendant Swiss

18   corporation operated multiple branch offices, hired employees, and generated revenue in

19   California, but this was not enough to establish a prima facie showing of general personal

20   jurisdiction.  *Id.*; *see also Pestmaster Franchise Network, Inc. v. Mata*, No. 16-CV-07268-EMC,

21   2017 WL 1956927, at \*3 (N.D. Cal. May 11, 2017) (holding defendant's three California

22   franchises were insufficient to establish general personal jurisdiction); *Garlough v. FCA US LLC*,

23   No. 2:20-CV-01879-JAM-AC, 2021 WL 1534205, at \*3 (E.D. Cal. Apr. 19, 2021) (holding

24   defendant's two facilities in California were insufficient to establish general personal jurisdiction).

25            Plaintiff has failed to make out a prima facie showing of general jurisdiction.  Although

26   HireRight's evidence reflects that the company has a number of employees in California and

27   maintains an office of some kind in Newport Beach, that in and of itself is insufficient to establish

28   that the company is at home in the state.  It is not headquartered in California.

United States District Court
Northern District of California

The fact that HireRight once maintained headquarters in Irvine does not alter the analysis. Plaintiff has claimed that HireRight violated his statutory rights when it failed to respond to a request for information that he made in March 2022.  By that time, HireRight no longer had its headquarters in California – and had not maintained headquarters in the state for approximately three years.[7]  *See* Supp. Vetter Decl. ¶ 10 (testifying that "HireRight operations have been centered and directed from states *other* than California since approximately 2019") (emphasis added).

Plaintiff protests that HireRight's principal place of business is in fact in Irvine, California.[8]  But as indicated above, Plaintiff has no evidence to support that claim.  At most, he has made allegations in his opposition that he conducted an Internet search and found that a number of high-level employees are based in Irvine.  HireRight submitted concrete evidence to the contrary – *i.e.*, the Vetter Declaration – demonstrating that, *inter alia*, most corporate executives and officers do not reside in California.  While the Vetter Declaration was not submitted until HireRight's reply, Plaintiff could have tried to contest the Vetter Declaration at the hearing.  He did not do so; indeed, as noted above, he failed to appear for the hearing altogether.

As in *Daimler*, Plaintiff nor Defendant are residents of California, Plaintiff's injury did not occur in California, and Defendant's activities and employees related to the action are located outside California.  *Daimler*, 571 U.S. at 139.  HireRight's place of incorporation and principal place of business are in Delaware and Tennessee, respectively, and there are no "exceptional"

---

[7] *See Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 505 (9th Cir. 2018) ("'Courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction.'") (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances – up to and including the date the suit was filed – to assess whether they satisfy the 'continuous and systematic' standard.  The determination of what period is reasonable in the context of each case should be left to the court's discretion.").

[8] Plaintiff argues California is HireRight's principal place of business based on the "nerve center" test which is used for diversity jurisdiction.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (noting that a corporation's "nerve center" is "where the corporation's high level officers direct, control, and coordinate the corporation's activities").  For purposes of this decision, the Court assumes that the nerve center test may be used for purposes of personal jurisdiction as well.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    circumstances which warrant general jurisdiction elsewhere. *Id.* at 139 n.19.  HireRight's

2    Californian finance and IT departments do not create contacts "'so substantial and of such a

3    nature'" as to justify the corporation being subject to general jurisdiction in the state. *Id.* at 127

4    (quoting *Int'l Shoe*, 326 U.S. at 318).  Such a determination would not allow national corporations

5    like HireRight "to structure their primary conduct with some minimum assurance" as to where

6    their multi-state conduct would render them liable to suit. *Id.* at 139.  HireRight clearly operates

7    in a variety of states, with offices and executives spread across the nation, and it would be

8    improper to subject the corporation to general jurisdiction in California solely because it employs

9    people in the state. *Id.* at 139 n. 20 ("General jurisdiction . . . calls for an appraisal of a

10   corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in

11   many places can scarcely be deemed at home in all of them.").  Plaintiff has failed to make a

12   prima facie showing of general jurisdiction over HireRight. *See Johnson* 860 F. App'x 532; *see*

13   *also Pestmaster*, 2017 WL 1956927, at *3; *see also Garlough*, 2021 WL 1534205, at *3.  Finally,

14   although HireRight is registered to do business in the state, "California does not require

15   corporations to consent to general personal jurisdiction in that state when they . . . register to do

16   business." *AM Tr. v. UBS AG*, 681 F. App'x 587, 588-89 (9th Cir. 2017) (holding that a Swiss

17   corporation that was registered to do business in California was not subject to general

18   jurisdiction); *compare Mallory v. Norfolk S. Ry. Co*., 143 S. Ct. 2028, 2044 (2023) (plurality

19   decision upholding a Pennsylvania statute requiring that out-of-state defendants that register to do

20   business in the state consent to general personal jurisdiction; holding that this comports with the

21   due process clause).

22   D.     Jurisdictional Discovery

23          A district court may appropriately grant jurisdictional discovery "'where pertinent facts

24   bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

25   the facts is necessary.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation

26   omitted).  By contrast, "'a refusal [to grant discovery] is not an abuse of discretion when it is clear

27   that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'"

28   *Martinez*, 764 F.3d at 1070 (citation omitted).  And "[w]here a plaintiff's claim of personal

1    jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

2    denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*

3    *Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

4              In *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022), the

5    Ninth Circuit addressed a request for jurisdictional discovery where the plaintiff asserted specific

6    jurisdiction.  The defendant corporations "specifically rebutted [p]laintiffs' unsupported

7    jurisdictional allegations and arguments" through attached declarations and affidavits from their

8    respective corporate officers explaining their lack of connection to the forum state.  *Id.* at 858,

9    865.  The court noted that "[p]laintiffs sought jurisdictional discovery 'without providing any

10   affidavit or evidence substantiating their requests or describing with any precision how such

11   discovery could be helpful to the Court,'" and their request amounted to only a "mere 'hunch.'"

12   *Id.* at 865.  *Compare, e.g.*, *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames, LLC*,

13   No. 20-16123, 2021 WL 5861279, at *1 (9th Cir. Dec. 10, 2021) (finding that a plaintiff's

14   proposed interrogatories and requests for productions which sought specific information regarding

15   game downloads, revenue, and advertising was a sufficient basis to grant jurisdictional discovery).

16             The case at bar is analogous to *LNS*.  Here, HireRight has provided concrete evidence that

17   specifically rebuts Plaintiff's unsupported allegations and arguments in support of general

18   jurisdiction.  Furthermore, Plaintiff has failed to provide any evidence to support his requests for

19   discovery, nor has he explained how discovery could be helpful to the Court or provide any

20   proposed discovery for the Court to consider.  It is also worth noting that, where a plaintiff is

21   asserting general jurisdiction with respect to a company, there might typically be publicly

22   available information demonstrating that the defendant company is at home in the state.  Given the

23   lack of any factual predicate to support Plaintiff's request and the absence of any details of what

24   Plaintiff seeks to discover, Plaintiff's request for jurisdictional discovery is denied.

25   E.       Severance and Transfer of HireRight's Claims

26             Although the Court has found a lack of general jurisdiction over HireRight, it need not

27   dismiss the claims against it.  Plaintiff has suggested that, in lieu of dismissal, the Court should

28   sever and transfer the claims against HireRight, either to a district in Tennessee or Oklahoma.

United States District Court
Northern District of California

10

1    Plaintiff does not specify under what authority the Court could effect a transfer of the claims

2    against HireRight.  Presumably, he is referring Federal Rule of Civil Procedure 21 and to 28

3    U.S.C. § 1631.  Rule 21 provides that "Misjoinder of parties is not a ground for dismissing an

4    action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The

5    court may also sever any claim against a party."  Fed. R. Civ. P. 21.  Section 1631, in turn, states

6    in relevant part as follows:

7            Whenever a civil action is filed in a court . . . and that court finds
             that there is a want of jurisdiction, the court shall, if it is in the
8            interest of justice, transfer such action or appeal to any other such
             court (or, for cases within the jurisdiction of the United States Tax
9            Court, to that court) in which the action . . . could have been brought
             at the time it was filed or noticed, and the action . . . shall proceed as
10           if it had been filed in or noticed for the court to which it is
             transferred on the date upon which it was actually filed in or noticed
11           for the court from which it is transferred.

12   28 U.S.C. § 1631.

13           There is some discussion as to whether § 1631 allows for a transfer where personal

14   jurisdiction (as opposed to subject matter jurisdiction) is lacking.  However, "the weight of circuit

15   authority" has broadly understood "that the use of the term 'jurisdiction' in § 1631 encompasses

16   both subject-matter and personal jurisdiction," and "the statute therefore requires a transfer when a

17   district court lacks either type of jurisdiction and the other statutory prerequisites are met."

18   *Franco v. Mabe Trucking Co., Inc*., 3 F.4th 788, 795 (5th Cir. 2021); *see also Danziger & De*

19   *Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("a district court that lacks

20   personal jurisdiction must at least consider a transfer . . . [and] [t]he relevant statute provides that

21   the district court "shall" transfer the case rather than dismiss it 'if [doing so] is in the interest of

22   justice.' 28 U.S.C. § 1631"); *see also Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d

23   102, 118 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp*., 580

24   U.S. 82 (2017) (finding a "broad construction is consistent with § 1631's purpose and goals" and

25   such an interpretation "is in line with . . . the weight of [circuit] authority").  Although some

26   district courts have held transfers pursuant to § 1631 are limited to cure a lack of subject matter

27   jurisdiction and do not extend to transfers for lack of personal jurisdiction, *see Allen v. Conagra*

28   *Foods, Inc*., No. 3:13-CV-01279-WHO, 2019 WL 5191009, at *3 (N.D. Cal. Oct. 15, 2019), "no

11

1    circuit courts [] have actually adopted the view that § 1631 does not apply to a transfer to cure a

2    lack of personal jurisdiction." *Franco*, 3 F.4th at 795.

3         There is also some dispute as to whether a partial transfer is permissible under § 1631.

4    *See, e.g.*, *Allen,* 2019 WL 5191009, at \*3.  However, the Court finds that once the action against

5    HireRight is severed, the resulting suits "may be regarded as two separate and independent

6    actions, each of which is then transferrable [] pursuant to the terms of section 1631." *D'Jamoos ex*

7    *rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (holding that a

8    district court may sever the claims against one defendant to transfer them to a proper venue, to

9    cure a lack of personal jurisdiction, regardless of the claims against the other defendants in the

10   action).

11        The Court need not definitively decide these issues because, at the hearing, HireRight

12   indicated that it did not oppose severance and transfer.  Furthermore, Defendant Lyft made an

13   appearance at the hearing and did not oppose severance and transfer either.  The Court further

14   notes that severance in this case at least would not be problematic given that the claims against

15   HireRight (*i.e.*, a failure to respond to a request for information) are discrete and separate from the

16   claims against the other defendants (*e.g.*, failure to provide adverse action notice, defamation, and

17   intentional interference with economic prospects).  *See Gaffney v. Riverboat Servs.*, 451 F.3d 424,

18   442 (7th Cir. 2006) ("[A] district court may sever claims under Rule 21, creating two separate

19   proceedings, so long as the two claims are 'discrete and separate.'  In other words, one claim must

20   be capable of resolution despite the outcome of the other claim.").

21        Accordingly, the Court severs the claims and transfers them to the Middle District of

22   Tennessee.  There appears to be no dispute that there is general jurisdiction in this Tennessee

23   district court given that this is where HireRight's headquarters are located.

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

**III.     CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's request for jurisdictional discovery and finds that general jurisdiction is lacking over HireRight.  However, in lieu of dismissal, the Court severs Plaintiff's claims against HireRight and transfers them to the Middle District of Tennessee.

This order disposes of Docket No. 20.

**IT IS SO ORDERED**.

Dated: August 9, 2023

_____
EDWARD M. CHEN
United States District Judge